# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NANCY GOEDERT, an individual,
REVEREND HARRY T. COOK II,
an individual, VICTOR KITTILA, an                    Case Number: 07-11515
individual, JAMES GRIMM, an individual,
and BRIAN C. PRICE, an individual,                   HONORABLE DENISE PAGE HOOD

               Plaintiffs,

v.

CITY OF FERNDALE,
a municipal corporation,

               Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

Plaintiffs have filed a Motion for Summary Judgment to declare the City of Ferndale's application of their Ordinance to ban the use of signs encouraging motorists to honk their vehicle horns during demonstrations to convey a message other than a warning, and banning the honking of vehicle horns during demonstrations to convey a message other than a warning, as unconstitutional regulations of Plaintiffs' free speech under the First Amendment of the United States Constitution. Plaintiffs seek a permanent injunction enjoining the City of Ferndale from enforcing its Policy, and nominal damages for the deprivation of their constitutional rights.

The City of Ferndale also filed a Motion for Summary Judgment, claiming that the Plaintiffs' Complaint should be dismissed on Summary Judgment, asserting that the City has a

substantial interest that is constitutionally protected in their application of the "Honk Statute."

## II.    STATEMENT OF FACTS

Plaintiffs challenge the City of Ferndale's suppression of automobile horns as a form of expression.  The City has enforced an ordinance to prohibit the display of signs asking motorists to "honk" their horns to express their support for the demonstrators, and prohibiting motorists from honking their horns for that purpose.  Plaintiffs allege that the City's prohibition violates the First Amendment's guarantee of freedom of speech.

In support for peace in Iraq, Plaintiffs Nancy Goedert, Victor Kittila, and Jim Grimm have participated in a Vigil on the corner of Woodward Avenue and Nine Mile Road in the City of Ferndale on Monday evenings.  The Vigil has been conducted at that location for nearly five years.  At one point, Vigil participants began to display signs stating "Honk for Peace" and later "Honk if You Want Bush Out."  Over the years, hundreds of motorists have communicated their agreement with the demonstrators by honking their horns as they passed by the Vigil.  Plaintiffs characterize the honks in support of the Vigil as citizens electing to join in a conversation among the citizens on perhaps the most pressing public issue of the day.

For the first three and a half years of the Vigil, there were no traffic problems or accidents associated with the Vigil.  Ferndale changed its approach towards the Vigil in June of 2006, when Police Captain Timothy Collins witnessed the same intersection crowded with health care reform demonstrators.  Demonstrators were on every corner of the intersection, the sidewalks, and alongside the median.  A concerned Captain Collins felt that the demonstrators were unruly and were causing a safety hazard by leaning into traffic with their signs, and he felt that the honking of vehicle horns was a distraction that could lead to safety problems.  The next

morning, Captain Collins discovered a Michigan Statute, M.C.L. 257.706(a), which provides that "the driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use the horn when upon a highway." This "Honk Statute," like the rest of Michigan's Motor Vehicle Code, has been incorporated into Ferndale's ordinances. (*See* Pl. Mot. Summ. Judgment, at 6; Ferndale Code of Ordinances § 18-5.) Captain Collins also located a disturbing the peace ordinance that he felt was applicable. Pl. Mot. Summ. Judgment, Exhibit 8, p. 20: 2-10.

Captain Collins then contacted the City Attorney's Office to ascertain whether both statutes could be enforced against the demonstrators. The City Attorney's Office approved the enforcement of the statutes against those at the Vigil, and the decision to apply them to ban the use of the word "honk" on any signs at the Vigil. After receiving a warning from the Ferndale police department, Plaintiff Kittila revised his sign to read "Ferndale Cops Say: Don't HONK if you want BUSH OUT." Plaintiff Nancy Goedert was holding a similar sign that read "POLICE SAY DON'T HONK for PEACE." On July 3, 2006 Plaintiff Kittila was arrested for holding his sign, while two weeks later, on July 17, 2007 Nancy Goebert was ticketed by the City for violation of the "Honk Statute." On October 9, 2006, Officer Carroll stopped and ticketed a motorist who honked in support of the Vigil, Plaintiff Brian Price.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But, as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV.   APPLICABLE LAW & ANALYSIS

### A.   Signs and Honks are Speech

The two Ordinances relied on by Ferndale to ban the display of the "honk signs," as well

as the honking of vehicle horns are Ordinance 12-63, and Ordinance 18-5.

Section 12-63 of the Ferndale Code states:

It shall be unlawful for any person to disturb, tend to disturb, incite or aid in disturbing the public peace by loud, violent, tumultuous, offensive, or obstreperous conduct, or to make or participate in making any unreasonable noise or disturbance riot or breach the peace, or to engage in any illegal or unreasonable act, and no person shall knowingly permit any such conduct upon any premises owned or possessed by him or under his control.

Section 18-5 of the Ferndale Code states:

The Michigan Vehicle Code, 1949 PA 300, MCL 257.1 to MCL 257.923 and all future amendments and revisions to the Michigan Vehicle Code when they are effective in the State of Michigan, are adopted by reference.

The First Amendment protects "speech," which includes expressive conduct in its meaning. *United States v. Grace,* 461 U.S. 171, 176, 103 S.Ct. 1702, 75 L.Ed. 2d 736 (1983). This protection extends to the states and their subdivisions through the Fourteenth Amendment. *Lovell v. City of Griffin,* 303 U.S. 444, 450, 58 S. Ct. 666, 82 L. Ed. 949 (1938); *Gitlow v. New York*, 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925). To determine whether particular conduct is communicative enough to be protected by the First Amendment, courts must consider two elements: (1) "whether an intent to convey a particularized message was present," and (2) "whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson,* 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

Here, there is no question that the Vigilers intended to convey a particularized message with their signs: that of peace, ending the war in Iraq, and advocating the end of President Bush's presidency. As such, the use of the signs containing "honk" during the demonstration is considered expression. *United States v. Grace*, 461 U.S. 171, 176, 103 S. Ct. 1702, 75 L. Ed. 2d. 736 (1983)(finding the display of a sign with a written message on it expressive conduct

5

protected by the First Amendment). Next, it is clear that those who drove past the signs understood what specific message the Vigilers were presenting. Motorists driving by the Vigil have honked their vehicle horns to show support for the message of the demonstrators. *See* Plaintiff's Motion for Summary Judgment, Ex. 3, ¶ 7. The Vigil "became a conversation between the Vigilers and the motorists, whereby the Vigilers were showing signs with their message of peace and the motorists were honking their horns to show their support for that same message of peace." Pl. Mot. Summary Judgment, at 4.

Ferndale cites *Weil v. McClough* to call into question whether honking may constitute speech. *Weil v. McClough*, 618 F. Supp. 1294 (S.D.N.Y, 1985). The court in *Weil*, however, found that horn-honking was expressive, as it was the plaintiff's way of "seeking to advise the traffic officer of the massive traffic jam." *Weil*, 618 F.Supp. at 1296. Ferndale also cites *Meaney v. Dever,* another case dealing with the question of whether horn honking constitutes speech. *Meany v. Dever*, 326 F.3d 283, 288 (1st Cir. 2003). The Supreme Court, however, has held that some conduct that has a communicative element should be treated like other forms of expression under the First Amendment. *See Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed. 2d 342 (1989). *Johnson* held that "[horn blowing] is not an expressive act *a fortiori*, and thus does not implicate the First Amendment unless context establishes it as such." *Id.* In *Meany*, the court found in dicta that the plaintiff's blowing of an air horn did not qualify as speech under *Johnson* because the audience would not have understood it as such, due to their distance from the air horn. *Meany,* 326 F.3d at 287. In this case, the message discerned from the passing motorists who honked in close proximity to the Vigilers is understood by those in the vicinity, and, is properly classified as speech under *Johnson.*

Ferndale claims that the honk signs are not protected speech because the signs were directed at inciting the lawless action of non-traffic hazard warning related honking. The City relies principally on *Brandenburg v. Ohio*, 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969). In that case, Brandenburg, a member of the Ku Klux Klan, spoke at a rally where he advocated violence to further the white-supremacist goals of the Klan. Brandenburg was convicted under Ohio's Criminal Sydicalism Statute, which barred advocating or teaching violence as a means of accomplishing social change as well as assembling with others for that purpose. *Id.* Later decisions of the Supreme Court, however, have "fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447.

It is unclear if *Brandenburg* may be so narrowly read to include only incitement to violence, as Plaintiff suggests. See *Morse v. Frederick*, 127 S. Ct. 2618, (2007)(*Brandenburg* finding cited in case involving student displaying sign encouraging drug use). However, the present case does not seem to be within its scope. Violation of the "honk ordinance" in question in this case is a mere civil infraction, hardly the same kind of "lawlessness" addressed in *Brandenburg*. The lawlessness addressed in cases following *Brandenburg* is not akin to the encouragement honking for a peaceful cause, as is the case here. See *U.S. v. Dellinger*, 472 F.2d 340, 355 (7th Cir. 1984); *U.S. v. McDermott*, 29 F.3d 404, 406 (8th Cir. 1994). *Brandenburg's* scope does not cover the honk signs in this case, nor does it defeat the protestors' claims that the holding of the signs is protected speech.

While Defendant Ferndale claims that the sounding of a horn is incapable of being speech, the honks nevertheless convey a particularized message that is understood by those who hear it. (Pl. Mot. Summ. Judgment, Ex. 3, ¶7.)   In fact, the Ferndale police ticket the motorists purely based upon exactly that, the "particularized message" the motorist is trying to convey. Motorist Brian Price was ticketed by Officer Carroll for the message he tried to convey through use of his horn. (Pl. Mot. Summ. Judgment, Ex. 7, p.24:13-25.)  For Ferndale to now claim that a honk is simply a honk, incapable of conveying speech is disingenuous. If a honk is incapable of conveying speech, then Ferndale would not be able to discern which honks are unlawful under their "Honk Statute," making the ordinance impossible to apply to motorists.  Ferndale's application of the statute, however, is evidence of the ability of the vehicle's horns to convey speech.  The "Honk Statute," as written, provides for an inference that a honk may convey speech, that of "warning."

### B.    Woodward and 9 Mile is a Traditional Public Forum

Plaintiff argues that Woodward and 9 Mile is properly characterized as a traditional public forum for First Amendment Analysis.  The right of the government to limit expressive activity is limited in places that have been traditionally devoted to assembly and debate.  *Perry Ed. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S. Ct. 948**,** 74 L. Ed. 2d 794 (1983).  A street has been consistently held to be a public forum.  "At one end of the spectrum are streets and parks which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"  *Id., quoting Hague v. CIO*, 307 U.S. 496, 515, 59 S. Ct. 954, 83 L. Ed. 1423 (1939).  Sidewalks are also traditional public forums for purposes of

First Amendment protection.  *Grace*, 461 U.S. at 179.

Woodward and 9 Mile is in the heart of downtown Ferndale.  (Pl. Mot. Summ. Judgment, Ex. 14, p. 50.)  It is one of the busiest intersections in Ferndale, second only to Woodward and Eight Mile in the volume of traffic.  (Pl. Mot. Summ. Judgment, Ex. 9, pp. 80:16-81:1.)  There is typically significant traffic noise during the time of the Vigil.  The intersection of 9 Mile and Woodward is properly characterized as a public forum for a First Amendment analysis.

### C. Ferndale's Ordinance is a Content Based Restriction

Plaintiff claims Ferndale's "Honk Statute" is a content based restriction, while Defendant claims the statute is content neutral.  (Pl. Mot. Summary Judgment, at 12.)  To determine whether a restriction is content-based, the courts look at whether it "restrict(s) expression because of its message, its ideas, its subject matter, or its content."  *Consolidated Edison Co. Of New York v. Public Serv. Comm. Of New York,* 447 U.S. 530, 537, 100 S. Ct. 2326, 65 L. Ed. 2d 219 (1980).  The Ordinance is content-based as any message, other than a warning, delivered by the "honk" sign or horn honking violates the Ordinance.  A sign simply encouraging peace in Iraq would not be an issue, while a sign encouraging motorists to honk for peace in Iraq would violate the ordinance.  Signs with the word "honk" contained in it are treated differently than other signs, and, therefore, the regulation is content-based.

In this case, honking a vehicle's horn is not banned completely, only the honking for reasons other than traffic warning is deemed unlawful.  The content of the message contained within the honk must be determined by the police before issuing citations, therefore the regulation, as applied to the honking motorists, may also be properly classified as a content-based policy. (Pl. Mot. For Summary Judgment, Ex. 8, pp. 21:18-23:7.)

9

**D.  Constitutional Standard**

Having determined that the signs encouraging the honking of vehicle horns, as well as the honking of the horns are speech, and that the City of Ferndale's regulation of the two are content based, Ferndale must "show that (its ordinance) is <u>necessary</u> to serve a <u>compelling state interest</u> and that it is <u>narrowly drawn</u> to achieve that end."  *King Enter., Inc. v. Thomas Township,* 215 F. Supp. 2d 891, 910 (E.D. Mich. 2002).  Ferndale must satisfy the test for both, the regulation of the display of honk signs, as well as the regulation of non-traffic related honking.

**E.  The City of Ferndale's Purported Interests in Regulating Horn Honking**

**1.  Safety**

The City must come forward with evidence showing that honking a vehicle horn other than to convey a warning causes a safety hazard.  *Weinburg v. City of Chicago*, 310 F. 3d 1029, 1038 (7th Cir. 2002)(Court found that although ordinance prohibiting peddling of books near stadium was content neutral, ordinance was not narrowly tailored to achieve city's legitimate interest in protecting citizenry and ensuring safety of sidewalks, and that the ordinance substantially burdened more speech than necessary.)  "The government has the burden of showing that there is evidence supporting its proffered justification." *Id.*  "Mere speculation of harm does not constitute a compelling state interest." *Consolidated Edison,* 447 U.S. at 543.

Even if the City's interest in promoting the safety of its citizens is a compelling state interest, Ferndale has not shown that the honk ordinance is "necessary" to achieve that interest.  The burden is on the City of Ferndale, and the City has not come forward with any evidence correlating a single honk expressing support for a demonstration with safety problems.  The

10

Vigil began nearly five years ago, and thousands of expressive honks have been made in support. Not a single accident has occurred as a result of the Vigil. Ferndale has not provided a single study or report showing that horn-honking or holding "honk" signs causes traffic safety problems. (Pl. Mot. For Summary Judgment, Ex. 9, pp. 66:15-25, 69:1-12, 70:11-18, 76:6-9; Ex. 16 Interrogatory Nos. 5, 7, 9, 10.)

It is important to note that the conditions surrounding the health care rally that led to the initial concern of the Ferndale Police Department involved protestors on all four street corners, the sidewalks, and the median at Woodward and 9 Mile. (Pl. Mot. Summary Judgment, Ex. 8, pp. 17:24-20:18.) Some of the health care demonstrators were even reaching into traffic. *See* Id. The noise of the honks was much greater than any honking Captain Collins had heard at the Vigil. (*See* Id, p. 20:10-13.) It is clear that the safety concerns implicated by the health care rally are of a different kind than that found at the peace Vigils.

## 2. Excessive Noise

Ferndale's ban on "honk" signs and the honking at the Vigil cannot be justified on the ground that it prevents "excessive" noise. Horn honking is consistent with the normal noise level of Woodward and 9 Mile Road during rush hour of a week day, or busy weekend shopping day, as it is in the heart of downtown Ferndale. (Pl. Mot. Summary Judgment, Ex. 14, pp. 50:22-51:22.) The intersection and adjacent streets are the sites of many boisterous organized events, such as the Woodward Dream Cruise[1] and the Gay Pride Fest, where music on bandstands blare

---

[1]     The Woodward Dream Cruise is "the world's largest one-day celebration of car culture," attracting more than 1 million visitors and "more than 40,000 muscle cars, street rods, custom, collector and special interest vehicles." (*See* http://www.woodwarddreamcruise.com/About.html.)

across the streets. The Dream Cruise, an event heavily promoted by Ferndale, generates widespread complaints from Ferndale citizens. (Pl. Mot. Summary Judgment, Ex. 14, p. 64:13-17.) Numerous noisy night clubs and restaurants are also located in the area of the intersection.

Assuming arguendo that noise regulation may be deemed a "compelling state interest," the City of Ferndale has not produced evidence that the honk regulation is "necessary" to limit the noise. While a Vigil held at midnight on a subdivision street that encouraged horn honking would seem to clearly be excessive noise for the circumstance, scattered honks on a busy intersection during rush hour do not rise to the level of "excessive." The maximum level for a residential/commercial area between 7:00 a.m. and 10:00 p.m., which would apply to the Vigil, is 75 decibels. Ferndale Code § 2-100(a). Sound levels are to be determined by a sound meter. Ferndale Code § 2-101. Ferndale has never measured the decibel level at the Vigil with a sound meter, and has failed to determine if the horn-honking there has exceeded the permissible level. Ferndale has simply failed to provide any meaningful support for their position that banning individual honks during rush hour on 9 Mile and Woodward is necessary to serve its interest in noise reduction.

### F. Narrow Tailoring of Policy

Ferndale has not adopted the least restrictive means of preventing excessive noise, or alleviating safety concerns. *King Enter., Inc. v. Thomas Township,* 215 F. Supp. 2d 891 (E.D. Mich. 2002.) A single honk violates Ferndale's regulation, and, as explained above, Ferndale has not offered evidence that a single honk can be classified as excessive noise, or as contributing to traffic concerns.

Captain Collins' concern initially grew out of observing a health care rally, which

12

involved more people than the normal attendance of the Vigil.  While this Court understands that the City of Ferndale has a legitimate interest in preventing such "hornet's nests" of noise from occurring, the prohibition of individual honks does not pass the "narrow tailoring" prong of First Amendment inquiry.

An example for how a narrowly tailored honk ordinance would look like may be found in Ferndale's own noise ordinance, which confines prohibited noise to any "excessive or unnecessary loud noise of a high volume or intensity which is clearly audible and which disturbs, annoys, or endangers the calm, comfort, quiet, repose, health, peace or safety of others beyond the immediate vicinity of the disturbance."  Ferndale Code of Ordinances § 2-98.  The Noise Ordinance also specifies the maximum permissible sound levels at 75 decibels.  Ferndale Code § 2-100(a).  Ferndale is free to determine whichever means they would choose, however, there must be narrow tailoring of the regulation to the compelling state interest in order to survive First Amendment scrutiny.

The City of Ferndale selectively enforces the application of the "Honk Statute."  Ferndale permits non-traffic related expressive horn-honking throughout the year for several events.  For example, celebratory honking is tolerated following certain sporting events, the annual "dream cruise" event, as well as after weddings. (Pl. Mot. Summary Judgment, Ex. 14, pp. 55:21-22; 56:5-11.)  Ferndale's willingness to grant exemptions for such events permits the inference that they may grant exemptions for other events, such as the peace Vigil.

## V.  CONCLUSION

For the reasons stated above, The City of Ferndale has failed to show that application of its "Honk Statute" to the Vigilers is necessary to serve any articulated compelling state interest.

Ferndale has also failed to satisfy the narrow tailoring prong of First Amendment content-based restriction on speech scrutiny.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment **(Docket. No. 14)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment **(Docket No. 12)** is **DENIED.**

**IT IS DECLARED** that Ferndale's Honk Ordinance, as applied to the Vigilers, as well those who honk in support of the Vigilers, is in Violation of the First Amendment and unconstitutional

**IT IS FURTHER ORDERED** that nominal damages in the amount of $1 are awarded to Plaintiffs.

<u>s/ DENISE PAGE HOOD</u>
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated:<u> April 4, 2008 </u>

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 4, 2008, by electronic and/or ordinary mail.

<u>s/ William F. Lewis</u>
Case Manage